# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# PADUCAH DIVISION
# CASE NO. 5:12-CR-00007

UNITED STATES OF AMERICA     PLAINTIFF

v.

BRANDON RILEY     DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on appeal of the Magistrate Judge's denial of the Defendant's motion to suppress. Def.'s Appeal, Docket Number ("DN") 6. The Government has responded. Gov't Resp., DN 7. The Defendant has replied. Def.'s Reply, DN 9. This matter is now ripe for adjudication. For the following reasons the decision of the Magistrate Judge is AFFIRMED.

### I.

The Defendant raises two issues on appeal. First, he contends that the odor of alcohol alone was insufficient to establish reasonable suspicion to conduct the investigatory stop. The Court holds that the investigating officer had reasonable suspicion to conduct the stop because the pungent odor of alcohol emanating from the Defendant's vehicle was a particularized and objective basis for suspecting that the Defendant was driving under the influence. Therefore, the investigatory stop did not violate the Fourth Amendment.

Second, the Defendant asserts that his consent to the breathalyzer test was involuntary because it was induced by a false promise of leniency. The Court holds that the consent to search form signed by the Defendant cannot be construed as a false promise of leniency and that the totality of the circumstances indicate that the Defendant voluntarily consented to the test.

**II.**

The facts of this case are largely undisputed. At approximately 2:30am on October 2, 2011, Defendant Brandon Riley ("Riley") and a passenger were returning to the army base at Fort Campbell, Kentucky, when they were stopped at Gate 4 by Officer Wilmer Matamoros ("Matamoros"). Pursuant to base policy, all individuals entering the facility, even soldiers like Riley, must stop and verify their identities. Matamoros approached Riley's vehicle as it stopped. "As soon as [Riley] lowered his window, [Matamoros] smelled a real pungent odor of alcohol." Test. Wilmer Matamoros, DN 4, p. 4:17-18. At that point, Matamoros began investigating Riley for driving under the influence of alcohol. Matamoros asked Riley to exit the vehicle and open the trunk so that he could observe Riley's movement and reactions. Riley stumbled as he exited the car and according to Matamoros, "[Riley] couldn't take a step without holding on to the vehicle." *Id.* at p. 5:3-4.

Matamoros then called Military Police Officer Blake Hall ("Hall"), who is trained to administer field sobriety tests. When he arrived, Hall observed that Riley was unsteady on his feet and had slurred speech. Test. Blake Hall, *id.* at p. 13:8-9. Hall administered three separate field sobriety tests to Riley, all of which he failed. Hall and his superior officers then detained Riley and transported him to a detention facility for a breathalyzer test.

Prior to administering the breathalyzer, Hall read Riley the standardized "Kentucky Implied Consent Warning." *Id.* at p. 16:7-23. The consent form explains that the individual is suspected of driving under this influence, that a breathalyzer test will only be administered with his or her consent, and that failure to consent will subject the suspect to harsher penalties if eventually convicted of the crime. *See* Kentucky Implied Consent Warning, DN 1-1, p. 21. Most notably for the present case, the form states that the "Special Assistance United States

Attorney has determined that there is no mandatory minimum jail sentence for a first offense DUI." *Id.*

Riley signed the consent form and was subsequently administered a breathalyzer test. The test showed that Riley had a blood alcohol concentration of 0.09, which is above Kentucky's legal limit. Test. Blake Hall, DN 4, p. 18:22-24; Alcohol Incident Report, DN 1, p. 22; *see* KRS § 189A.010(a) (stating that no person shall "operate or be in physical control of a motor vehicle in [Kentucky] having an alcohol concentration of 0.08 or more . . ."). Accordingly, Riley was detained and subsequently prosecuted for operating a motor vehicle with a blood alcohol content above Kentucky's legal limit. After his motion to suppress was denied, Riley was convicted and sentenced to two days in jail and fined $500. This was his first DUI conviction.

Riley now appeals his conviction on two grounds. First, he contends that the odor of alcohol alone was insufficient to give Officer Matamoros reasonable suspicion to conduct an investigatory stop. Second, Riley argues that his consent to the breathalyzer test was involuntary because it was the product of a false promise of leniency.

**II.**

The Court has jurisdiction to hear this appeal pursuant to 18 U.S.C. § 3402, which provides for an appeal from a conviction before a magistrate judge, and 18 U.S.C. § 3231, which vests the Court will jurisdiction over all federal crimes. The Magistrate Judge properly exercised jurisdiction under 18 U.S.C. § 3401 and Local Criminal Rule 5.1. Although the circumstances leading to this appeal occurred at Fort Campbell, a federal installation, the Magistrate Judge applied Kentucky's substantive motor vehicle law pursuant to the Assimilative Crimes Act, 18 U.S.C. § 13.

**III.**

The issues raised by Riley on appeal require review under two different standards. First, when reviewing the denial of a motion to suppress, the lower court's findings of facts are reviewed for clear error, while it conclusions of law are reviewed *de novo*. *See Ornelas v. United States*, 517 U.S. 690, 695-98 (1996); *United States v. Hurst*, 228 F.3d 751, 756 (6th Cir. 2000). Second, the voluntariness of a defendant's consent to search is a question of fact reviewed for clear error. *See United States v. Tillman*, 963 F.2d 137, 143 (6th Cir. 1992). "Whether consent is voluntarily given or is in the product of duress or coercion either express or implied is a question of fact to be viewed by the totality of the circumstances." *Id.* (citing *Schneckloth v. Bustamonte*, 421 U.S. 218, 233-34 (1973)). Evidence regarding the voluntariness of the consent "must be viewed in the light most favorable to the government." *United States v. Walker*, 181 F.3d 774, 775 (6th Cir. 1999) (citation omitted).

**IV.**

Upon review, the Court finds that Officer Matamoros had reasonable suspicion to investigate Riley for driving under the influence of alcohol. "Reasonable suspicion is more than an ill-defined hunch; it must be based upon a particularized and objective basis for suspecting the particular person . . . of criminal activity." *Weaver v. Shadoan*, 340 F.3d 398, 407 (6th Cir. 2003) (citation omitted). Reasonable suspicion requires "specific and articulable facts, which, taken together with rational inferences from those facts, reasonably warrant [the investigatory stop.]" *Terry v. Ohio*, 392 U.S. 1, 21 (1968). In this case, the fact that Officer Matamoros immediately smelled a "real pungent odor of alcohol" when Riley lowered his window was sufficient to establish a reasonable suspicion of criminal activity.

Although no published Kentucky decision addresses the specific issue, *Waldrip v.*

*Commonwealth*, No. 2004-CA-000741-DG, 2005 WL 1593702 (Ky. Ct. App. July 8, 2005), stands for the proposition that, in Kentucky, the odor of alcohol alone is sufficient to establish reasonable suspicion that an individual is driving under the influence. Around 1:00am on December 6, 2004, Kentucky State Trooper John Boyd spotted Defendant Gordon Waldrip driving north on Highway 121 in Calloway County, Kentucky. *Waldrip*, 2005 WL 1593702, at *1. Boyd ran Waldrip's license plate number through a police database, but the plate was designated as "not on file" because Boyd had misread the number. *Id.* Suspecting that either the car or the license plate was stolen, Boyd stopped Waldrip. After pulling over, Boyd rechecked the plate number, realized his mistake, and approached Waldrip to apologize. *Id.* As Boyd approached Waldrip, however, "he detected a strong odor of alcohol [and] detained Waldrip to ascertain whether he had been driving under the influence." *Id.* Boyd subsequently arrested Waldrip. The district court denied Waldrip's motion to suppress. *Id.* Upon review, the Kentucky Court of Appeals affirmed and held that even though the initial stop was based on a mistake, "[o]nce Trooper Boyd smelled alcohol, he had a reasonable and articulable suspicion, separate and distinct from his prior mistake regarding the license plate, which justified – and in fact required – continuation of the stop." *Id.* at 2.

In the present case, Riley does not challenge the initial, administrative stop at Gate 4. Rather, Riley argues that absent other indicia of intoxication - red eyes, slurred speech, confusion, or erratic driving - the smell of alcohol alone was insufficient to give Officer Matamoros reasonable suspicion to expand the scope of the stop and further investigate him for driving under the influence. In support of his position, Riley relies on cases from Kansas and Ohio. *See City of Hutchinson v. Davenport*, 54 P.3d 532, 535 (Kan. Ct. App. 2002) ("Alcohol on one's breath alone does not provide a reasonable suspicion to support a stop."); *State v. Dixon*,

No. 2000-CA-30, 2000 WL 17660664 (Ohio Ct. App. Dec. 1, 2000) (finding no basis for reasonable suspicion where defendant had "glassy, bloodshot eyes," smelled of alcohol, and admitted that he had "consumed one or two beers"); *State v. Derov*, No. 07 MA 71, 2009 WL 3327196, *3-4 (Ohio Ct. App. Oct. 8, 2009) (citing *Dixon*) (finding no basis for reasonable suspicion where defendant had red glassy eyes and the detaining officer noticed a strong smell of alcohol).[1] Although these cases lend support for Riley's position, they are not from this jurisdiction and are not persuasive, especially where a Kentucky court has directly ruled on this issue. Applying Kentucky law, the *Waldrip* Court held that, in Kentucky, the odor of alcohol alone establishes reasonable suspicion sufficient to investigate one for driving under the influence. *Waldrip*, 2005 WL 1593702, at *2. As a result, the cases on which Riley relies lose whatever persuasiveness they may be afforded in other jurisdictions.[2]

Riley also places substantial emphasis on the fact that a passenger was riding in his car at the time of the stop. According to Riley, this fact weighs against reasonable suspicion because the odor of alcohol could have emanated from the passenger. Riley's position is simply not borne out by the evidence. Officer Matamoros testified that he "smell a real pungent odor of alcohol" as soon as Riley lowered his window. Test. Wilmer Matamoros, DN 4, p. 4:17-18. The smell was not slight, merely noticeable, or even strong. It was *pungent*, and Matamoros smelled it *immediately* after Riley lowered his window. These facts were more than sufficient to give

---

[1] Riley also relies on *State v. Taylor*, 44 N.E.2d 481 (Ohio Ct. App. 1981), *People v. Royball*, 655 P.2d 410 (Colo. 1982), and *State v. Kliphouse*, 771 So. 2d 16 (Fla. Dist. Ct. App. 2000). These cases address issues of probable cause, not reasonable suspicion. Accordingly, they do not support Riley's position that the smell of alcohol alone is insufficient to create reasonable suspicion that one is driving under the influence.

[2] The Government relies on *United States v. Ivey*, 307 F. App'x 941, 942 (6th Cir. 2009) ("The smell of alcohol emanating from Ivey's person provided the requisite suspicion and justified Ivey's continued detention.") and *United States v. Neumann*, 183 F.3d 753, 756 (8th Cir. 1999) ("The detection of alcohol on Neumann's breath provided [the officer] with a reasonable suspicion to further detain Neumann and expand the scope of the investigation."). Although informative, the Court declines to follow these cases because they are factually distinguishable from this case. In *Ivey*, the officer observed the odor of alcohol emanating directly from the defendant's person, not just from his vehicle. *Ivey*, 307 F. App'x at 942. In *Neumann*, the officer smelled alcohol directly on the defendant's breath. *Neumann*, 183 F.3d at 755. Additionally, other facts suggested the defendant was intoxicated. *See id.* at 754-56.

6

Matamoros reasonable suspicion that Riley was driving under the influence regardless of whether a passenger was present at the time of the stop.

Upon *de novo* review, the Court finds that Officer Matamoros had reasonable suspicion to investigate Riley for driving under the influence. Accordingly, the Magistrate Judge did not err when denying Riley's motion to suppress.

V.

After being transported to the detention facility, Riley consented to and was administered a breathalyzer test. Riley now contends that his consent was the product of a false promise of leniency and was therefore not voluntarily given. He claims the Kentucky Implied Consent Warning read to him prior to the breathalyzer test contained the false promise that he would receive no jail time if he consented to the test. In particular, Riley points to the portion of that form which states that the "Special Assistant United States Attorney has determined that there is no mandatory minimum jail sentence for a first offense DUI." Kentucky Implied Consent Warning, DN 1-1, p. 21. According to Riley, this statement induced him to consent to the breathalyzer upon the false promise that he would receive no jail time if convicted. It was only later that he learned of the SAUSA's long standing practice of recommending a two-day jail term for first-time DUI offenders.

Breathalyzer tests, like other physical intrusions upon one's person, are searches protected by the Fourth Amendment. *Skinner v. Ry. Labor Execs. Ass'n*, 489 U.S. 602, 616-17 (1989) ("Subjecting a person to a breathalyzer test, which generally requires the production of alveolar or 'deep lung' breath for chemical analysis implicates similar concerns about bodily integrity and . . . should also be deemed a search."); *Relford v. Lexington-Fayette Urban Cnty. Gov't*, 390 F.3d 452, 457 (6th Cir. 2004). Like other Fourth Amendment searches, however, a

breathalyzer test may be conducted without a warrant if the person being tested voluntarily consents to the search. *See Sckneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973) ("[O]ne of the specifically established exceptions to the requirement of both a warrant and probable cause is a search that is conducted pursuant to consent."). "The question of whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of the circumstances." *Id.* at 227. And as stated above, the voluntariness of one's consent is a question of fact to be reviewed for clear error. *United States v. Tillman*, 963 F.2d 137, 143 (6th Cir. 1992).

Upon review, the Court can find no clear error that would warrant reversal of the Magistrate Judge's decision. Nothing in the record demonstrates that Riley was promised anything in exchange for his consent. Nor has he pointed to any evidence showing that he was otherwise coerced. Riley bases his appeal on the SAUSA's determination that there is no mandatory minimum sentence for a first-time DUI offence in Kentucky law. The mere fact that the Implied Consent Warning stated the SAUSA's interpretation of Kentucky law cannot be viewed as a promise to apply it to Riley in a particular manner. Neither the Implied Consent Warning nor the SAUSA's interpretation of Kentucky law was ever given to Riley as a promise that he would avoid jail time if he consented to the breathalyzer test. Upon a review of the totality of the circumstances, the Court finds that Riley's consent to the breathalyzer was voluntary and not the product of a false promise of leniency or coercion. As such, the Magistrate Judge's decision was not clearly erroneous.

## CONCLUSION

Plaintiff Brandon Riley appeals the Magistrate Judge's denial of his motion to suppress and his subsequent conviction of driving under the influence. For all of the foregoing reasons **IT**

**IS HEREBY ORDERED** that the decision of the Magistrate Judge is **AFFIRMED** and the appeal is **DISMISSED**.

cc:

Counsel